Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PIER LUIGI MANICI and SARA CAVAGNA MANICI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENOCHIAN BIOSCIENCES, INC. f/k/a DANDRIT BIOTECH USA, INC., ERIC LEIRE, MARK DYBUL, ROBERT WOLFE and LUISA PUCHE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Pier Luigi Manici and Sara Cavagna Manici (together, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Enochian BioSciences, Inc. ("Enochian" or the "Company") f/k/a DanDrit Biotech USA, Inc. ("DanDrit") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Enochian; and (c) review of other publicly available information concerning Enochian.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Enochian securities between January 17, 2018 and June 27, 2022, inclusive (the "Class Period"), including common stock issued by Enochian in a private placement offering on or about February 16, 2018. Plaintiffs pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Enochian is a pre-clinical stage biotechnology company that is developing cures and treatment for HIV, HBV, influenza, coronavirus, and cancer.

3.     On May 25, 2022, the U.S. Department of Justice announced that Serhat Gumrukcu, the co-founder and inventor of Enochian, had been arrested in a murder-for-hire conspiracy.

4.     On this news, the Company's shares fell $2.17, or 37%, to close at $3.70 per share on May 25, 2022, on unusually heavy trading volume.

5.     On June 1, 2022, Hindenburg Research published a research report alleging, among other things, that the charge related to the murder of Gregory Davis, just days before Gumrukcu was to defend himself against felony fraud allegations

related to a deal with Davis. According to the report, "[f]ederal prosecutors argued that the prospective merger deal that eventually resulted in Enochian going public served as a key motive for the murder." The report also alleged that Gumrukcu is not a licensed doctor in any jurisdiction in the world, that he had pled guilty to felony charges in the midst of the Company's merger, and that he "had siphoned tens of millions of dollars in shareholder cash from Enochian to his privately-owned entities." Moreover, Hindenburg alleged that Enochian has been aware of the foregoing allegations.

6.     On this news, the Company's shares fell $1.495, or 28.4%, to close at $3.77 on June 1, 2022, on unusually heavy trading volume.

7.     On June 27, 2022, *The Wall Street Journal* published an article about Gumrukcu's participation in the murder-for-hire conspiracy, claiming that Gumrukcu owed Davis over $900,000 after Gumrukcu coaxed Davis into entering into a fraudulent oil deal with him. The article further alleged that FBI agents were suspicious that Gumrukcu "had fabricated his resume and held neither a medical degree nor a doctoral degree."

8.     On this news, the Company's shares fell $0.73, or 21.9%, to close at $2.60 per share on June 27, 2022, on unusually heavy trading volume.

9.     Throughout the Class Period, Defendants made materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that co-founder and inventor Gumrukcu was engaged in a variety of frauds; (2) that Gumrukcu was not a licensed doctor anywhere in the world; (4) that, as a result of the foregoing, Gumrukcu's purported contributions to the Company lacked a reasonable basis; (5) that, as a result of the foregoing, the Company had overstated its commercial prospects; (6) that Gumrukcu had improperly diverted approximately $20 million from Enochian to entities he owned; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business,

operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

14.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.    Plaintiffs, as set forth in the accompanying certifications, incorporated by reference herein, purchased Enochian securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Enochian is incorporated under the laws of the Delaware with its principal executive offices located in North Hollywood, California. Since December 10, 2018, Enochian's shares have traded on the NASDAQ under the symbol "ENOB." Prior to that, they traded over-the-counter Bulletin Board ("OTCBB").

17.     Defendant Eric Leire ("Leire") was the Chief Executive Officer ("CEO") of the Company from February 2011 to January 7, 2019.

18.     Defendant Mark Dybul ("Dybul") has served as the Principal Executive Officer of the Company since January 7, 2019.

19.     Defendant Robert Wolfe ("Wolfe") was the Company's Chief Financial Officer ("CFO") of the Company from February 2011 to January 7, 2019.

20.     Defendant Luisa Puche ("Puche") has served as the Company's CFO since January 7, 2019.

21.     Defendants Leire, Dybul, Wolfe, and Puche (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

# SUBSTANTIVE ALLEGATIONS

## Background

22.     Enochian is a pre-clinical stage biotechnology company that is developing cures and treatment for HIV, HBV, influenza, coronavirus, and cancer.

## Materially False and Misleading
## Statements Issued During the Class Period

23.     The Class Period begins on January 17, 2018. On that day, DanDrit announced it had entered an agreement to acquire Enochian Biopharma Inc. ("Legacy Enochian"). The Company's press release stated, in relevant part:[1]

("DanDrit") is pleased to announce that it has signed an agreement under which it has agreed to acquire Enochian Biopharma Inc. ("Enochian") and its new technology platforms. Enochian is developing an innovative proprietary technology, which includes combinatory gene therapy methods in the field of HIV/AIDS. ***DanDrit believes that through the acquisition, Enochian's technology will enhance DanDrit's research and development efforts in cellular therapy and add to its pipeline***, which also includes cellular immune-oncology products for the prevention of relapse of metastatic colon cancer after resection and chemotherapy.

As consideration for the acquisition, the stockholders of Enochian shall be entitled to receive (i) 50% of the number of shares of DanDrit's common stock issued and outstanding as of the effective time of the acquisition, after giving effect to the acquisition, (ii) pro rata shares of DanDrit's common stock upon the exercise or conversion of any of DanDrit's stock options and warrants currently outstanding and (iii) expenses related to the acquisition and the transactions contemplated thereby.

DanDrit plans to change its name to Enochian ImmunoScience, Inc. and to relocate to its new headquarters in Los Angeles, California.

The acquisition is subject to customary closing conditions, and in addition (i) Enochian will have executed a perpetual, sole and exclusive license with Weird Science LLC to use all of Weird Science LLC's intellectual property rights in its proprietary technology for the prevention, treatment and amelioration of HIV in humans, including an assignment of the rights to experimental studies with syngeneic and humanized mice models***, and DanDrit will be satisfied with all due diligence related to such intellectual property***, (ii) DanDrit, Weird Science LLC and a certain stockholder of DanDrit will have entered into an Investor Rights Agreement and a Standstill & Lock-Up Agreement, (iii) DanDrit will have not less than $19,000,000 in cash on hand, less up to a maximum of $1,000,000 of expenses related to the acquisition and

---

[1] Unless otherwise specified, all emphasis in bold and italics hereinafter is added.

(iv) DanDrit will have executed employment and/or consulting agreements with certain persons affiliated with Enochian. DanDrit expects the acquisition to be finalized on or before February 15th.

"We are excited about the potential of the Enochian technology platforms and the application of these technologies to complement ongoing research and development efforts," said Eric Leire, MD, DanDrit's President and Chief Executive Officer. "This acquisition demonstrates our deep commitment to continuing to invest in future innovation in the field of cellular therapy and we believe Enochian's technology will enhance our efforts to improve care for people with HIV and advanced cancers."

24.     After the market closed on February 19, 2018, DanDrit issued a press release announcing the completion of its acquisition of Enochian Biopharma Inc. and its intent to change its name to Enochian BioSciences, Inc., during which he stated, "As a result of the Acquisition, DanDrit owns a perpetual, fully up, royalty free, sublicensable, exclusive, license to new technology platforms for the treatment of HIV, including combinatory gene therapy models[.]"

25.     On May 15, 2018, Enochian filed a Form 10-Q for the quarterly period ended March 31, 2018, stating that Defendants Leire and Wolfe determined the Company's disclosure controls and procedures were not effective due to deficiencies related to inadequate resources to address complex accounting issues. It also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Leire and Wolfe attesting to the accuracy of financial statements and the disclosure of all fraud. The report also stated, in relevant part:

On February 16, 2018, the Registrant entered into a consulting agreement with Weird Science under which Weird Science will provide ongoing medical services related to the development of the Company's products for the treatment of HIV and cancer.

26.     On July 2, 2018, Defendant Leire wrote a letter to the shareholders, stating in relevant part:

Before completing the acquisition of Enochian Biopharma, *we engaged in due diligence* to assess the value of its proprietary technology related to the treatment of HIV. This included our internal evaluation of the viability of the technology, an evaluation by intellectual property counsel on the intellectual property rights associated with such technology, and an independent valuation on the technology.

On October 1, 2018, Enochian filed its Form 10-K for the fiscal year ended June 30, 2018, which contained SOX certifications by Defendants Leire and Wolfe attesting to the accuracy of financial statements and the disclosure of all fraud. The report also stated in relevant part:On July 9, 2018, the Company entered into a consulting agreement with G-Tech Bio, LLC, a California limited liability company ("G-Tech") to assist the Company with the development of the gene therapy and autologous and allogenic cell therapy modalities for the prevention, treatment, amelioration of HIV in humans, and with the development of a genetically enhanced Allogenic Dendritic Cell for use as a wide spectrum platform for various diseases (including but not limited to cancers and infectious diseases). G-Tech is entitled to consulting fees for 20 months, with a monthly consulting fee of not greater than $130,000 per month. ***G-Tech is controlled by certain members of Weird Science***.

27.    On February 11, 2019, Enochian delivered a presentation during its Investor Day in which it delivered the following slide listing Gumrukcu as its "Inventor" part of its "Experienced Leadership" and having "[s]trong expertise in the field of gene therapy, HIV and immuno-oncology focusing on developing transformative, multi-indication, platform drugs that will change the standard of care of HIV/AIDS and cancer."



28.     On September 30, 2019, Enochian filed a Form 10-K for the fiscal year ended June 30, 2019, which contained SOX certifications by Defendants Dybul and Puche attesting to the accuracy of financial statements and the disclosure of all fraud.

29.     On November 25, 2019, Enochian issued a press release announcing an agreement "to acquire an exclusive, license for a treatment under development aimed to treat the Hepatitus B Virus (HBV) infections from G-Tech Bio, LLC," stating in relevant part:

> HV-01 was the original impetus for the conception of Enochian Biosciences' HIV focus. It is based on an insight by Dr. Gümrükcü, drawn from a non-HIV field, that by adding an additional genetic modification to cells beyond those that protect cells from HIV infection could give a competitive advantage to the survival of the cells in HIV patients, leading to enhanced engraftment of the cells and increase the potential for a cure. This approach could also significantly reduce the therapies needed, potentially allowing the procedure to be done on an outpatient basis.
>
> *     *     *
>
> Based on the innovative mechanism of action designed to be developed into a potential cure for HBV, Dr. Gümrükcü's two novel approaches aimed at an alternative path to cure and/or treat HIV are in the discovery phase.
>
> *     *     *
>
> **The Inventor**
>
> After receiving his preclinical training at the Dokuz Eylul University in 2004, Dr. Serhat Gümrükcü continued his training in various institutions and started working as a physician licensed by the Ministry of Health of Turkey in 2008. Later, after working under Dr. Suat Arusan in Turkey, Dr. Gümrükcü decided to explore further studies in the field of cell and gene therapies.  He is currently the director of Seraph Research Institute, a non-profit organization where he runs a research lab at the cutting edge of cell, gene and immunotherapy research. On agreeing to join the Institute's scientific board, one of the world's leading experts and his mentor in immuno-oncology Prof. Shimon Slavin said, "Dr. Gümrükcü was a young Turkish post-doc with interesting ideas when I first met him eight years ago. I am looking forward to our future collaboration in developing and implementing novel cancer treatments at Seraph Research Institute."
>
> His interest in other fields of science, such as physics, has led him to pursue creating cross-disciplinary solutions to complex human diseases as a researcher. Based on his unique research training, Dr. Gümrükcü has become a prolific inventor, submitting various patent/provisional patent applications, which include several approaches aimed to treat or

potentially cure HIV/AIDS, Hepatitis B, major solid tumors, rare but deadly diseases, and for a novel vaccine for HIV among many others.

Dr. Gümrükcü has licensed intellectual property related to HIV and several solid tumors to Enochian. Dr. Mark Dybul, MD said, "Dr. Gümrükcü is one of those rare geniuses that is not bound by scientific discipline or dogma. He sees connections and opportunities often missed. His ideas are the purest kind: those that seem so obvious and simple once he has conceived of, and explained them."

30.    On December 10, 2019, Enochian issued a press release, stating in relevant part:

**Enochian Biosciences Announces Scientific Presentation of a Novel Approach to Potentially Cure Hepatitis B Virus**

\*          \*          \*

Dr. Serhat Gumrukcu, the inventor of products in the Enochian pipeline and Director of the Seraph Research Institute (SRI), presented the data at the HEP DART scientific conference in Kauai, Hawaii. The data were generated through a collaboration between SRI and Dr. Philippe Gallay of the Scripps Institute.

31.    On September 23, 2020, Enochian filed a Form 10-K for the period ended June 30, 2020, which contained SOX certifications by Defendants Dybul and Puche attesting to the accuracy of financial statements and the disclosure of all fraud, stating in relevant part:

***We are highly dependent on the services of third parties to conduct research and development of our pipeline, and our failure to maintain the services of such third parties could harm our business***

We are highly dependent on third parties working in conjunction with our officers, employees, scientific advisory board and research institutions in the research and development of product candidates in our pipeline. Many of the techniques utilized in the development of our product candidates have been developed by Dr. Serhat Gümrükcü, and we rely on the services of Dr. Gümrükcü, and of G-Tech Bio LLC and Seraph Research Institute, in the continued development of our pipeline. ***Our future performance will depend on our ability to retain the services of Dr. Gümrükcü***, G-Tech Bio LLC and Seraph Research Institute. The loss of the services of any of the foregoing, or of any of our key employees or scientific advisory board members could impede the achievement of our research, development, regulatory approvals and commercialization objectives.

(First emphasis in original.)

32. On March 24, 2021, Enochian issued a press release, stating in relevant part:

> Seraph Research Institute (SRI) and Enochian BioSciences, Inc., a company focused on gene-modified cellular and immune therapies in infectious diseases and cancer, today announced that a 36-year old patient with recurrent glioblastoma achieved complete remission for a period of 15 months.
>
> * * * *
>
> In compliance with U.S. Food and Drug Administration guidance, SRI treated the patient with natural killer (NK) and dendritic cells (DC) from a relative who had a partial genetic mismatch.

33. On July 16, 2021, Enochian filed a Form 424B5 with the SEC, stating in relevant part:

> We are highly dependent on third parties working in conjunction with our officers, employees, scientific advisory board and research institutions in the research and development of product candidates in our pipeline. Many of the techniques utilized in the development of our product candidates have been developed by Dr. Serhat Gümrükcü, and we rely on the services of Dr. Gümrükcü, and of G-Tech Bio LLC and Seraph Research Institute, in the continued development of our pipeline. *Our future performance will depend on our ability to retain the services of Dr. Gümrükcü*, G-Tech Bio LLC and Seraph Research Institute. The loss of the services of any of the foregoing, or of any of our key employees or scientific advisory board members could impede the achievement of our research, development, regulatory approvals and commercialization objectives.

34. On September 24, 2021, Enochian filed a Form 10-K for the fiscal year ended June 30, 2021, highlighting the Company's dependence on Mr. Gumrukcu:

> Our dependence on the services of experts, including Dr. Serhat Gümrükcü, and third parties to research and develop product candidates in cooperation with our employees, officers, scientific advisory board, and research institutions
>
> * * * *
>
> Our co-founder and inventor, Dr. Serhat Gumrukcu, who is also the Director of Seraph Research Institute (SRI), submitted Pre-IND for ENOB-HV-21 an innovative treatment of Natural Killer (NK) and Gamma Delta T-Cells (GDT) collected from another person.
>
> * * * *
>
> We are highly dependent on third parties working in conjunction with our officers, employees, scientific advisory board and research institutions in the research and development of product candidates in our

pipeline. Many of the techniques utilized in the development of our product candidates have been developed by Dr. Serhat Gumrukcu, and we rely on the services of Dr. Gumrukcu, and of G-Tech Bio LLC and SRI, in the continued development of our pipeline. Our future performance will depend on our ability to retain the services of Dr. Gumrukcu, G-Tech Bio LLC and SRI. The loss of the services of any of the foregoing, or of any of our key employees or scientific advisory board members could impede the achievement of our research, development, regulatory approvals and commercialization objectives.

\*     \*     \*

We hold rights under license agreements with our licensors, including Weird Science and G-Tech, , SRI and Dr. Serhat Gumrukcu that are important to our business. Our research and development platform is built, in part, around patent rights licensed from such licensors.

35.    The above statements identified in ¶¶ 23-34 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that co-founder and inventor Gumrukcu was engaged in a variety of frauds; (2) that Gumrukcu was not a licensed doctor anywhere in the world; (4) that, as a result of the foregoing, Gumrukcu's purported contributions to the Company lacked a reasonable basis; (5) that, as a result of the foregoing, the Company had overstated its commercial prospects; (6) that Gumrukcu had improperly diverted approximately $20 million from Enochian to entities he owned; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

36.    The truth began to emerge on May 25, 2022 when the U.S. Department of Justice ("DOJ") announced that Serhat Gumrukcu, the co-founder and inventor of Enochian, had been arrested in a murder-for-hire conspiracy. The DOJ's press release stated that Gumrukcu had been arrested in connection with the murder of Gregory Davis, stating in relevant part:

According to court records, Jerry Banks, 34, of Fort Garland, Colorado was previously arrested after having been charged with kidnapping Gregory Davis from his Danville home on January 6, 2018.  On January 7, 2018, Davis was found dead in a snowbank several miles from his

residence.  Although Banks is not charged with Davis's murder, the government has alleged that Banks murdered Davis.  Also, Aron Lee Ethridge, 41, of Henderson, Nevada has been arrested on charges of conspiring to kidnap Davis, and Ethridge is alleged to have communicated with Banks before and after the kidnapping and murder.

37.    On this news, the Company's shares fell $2.17, or 37%, to close at $3.70 per share on May 25, 2022, on unusually heavy trading volume.

38.    Also on May 25, 2022, after the market closed, Enochian issued a press release with a statement from its Board of Directors, stating in relevant part:

- The Board has verified that the incident leading to the arrest occurred prior to the merger which created the Enochian of today, and *is completely unrelated* to the Company;

- The Board reviewed the important scientific discoveries of the inventor and the Company's rights with regards to those discoveries, which will be unchanged

- The ***Board confirmed that Dr. Serhat Gumrukçu has had no formal role in the Company, and has no involvement with the Company's strong management, scientific team and collaborations with leaders in the field;***

The Board of Directors of Enochian BioSciences Inc. met today and expressed unanimous and strong affirmation of the current position of the Company, the Management and the promising advancement of the Research and Development pipeline.

The strong affirmation of the Company by the Board follows the unexpected and shocking press release by the Department of Justice that Dr. Serhat Gumrukçu, an inventor and co-founder of the Company, has been arrested and charged with serious crimes (link to release) that are reported to have occurred prior to the merger which created the Company of today. *The Board reviewed what is known and concluded without reservation that there is no link between the criminal charges and any actions of the Company.*

39.    The above statements identified in ¶ 38 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that co-founder and inventor Gumrukcu was engaged in a variety of frauds; (2) that Gumrukcu was not a licensed doctor anywhere in the world; (4) that, as a result of the foregoing, Gumrukcu's purported contributions to the Company lacked a reasonable basis; (5) that, as a result of the foregoing, the Company had

overstated its commercial prospects; (6) that Gumrukcu had improperly diverted approximately $20 million from Enochian to entities he owned; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

40.     On June 1, 2022, Hindenburg Research published a research report revealing that the federal prosecutors alleged Gumrukcu's motive for the murder-for-hire was to conceal fraud allegations by the victim, Mr. Davis, which would have threatened Enochian's merger in February 2018.  It stated, in relevant part:

> Federal prosecutors outlined Gumrukcu's motive, describing how Davis threatened to go to the FBI alleging fraud against Gumrukcu and his brother:
>
> > "In 2017, Davis was threatening the Gumrukcus about going to the FBI with evidence that the Gumrukcus were defrauding him in a multimillion-dollar oil deal that the Gumrukcus had entered into with Davis in early 2015."
>
> Prosecutors made clear that in addition to avoiding criminal fraud charges, a key motive for the alleged murder plot was that Gumrukcu was in the midst of closing the merger with Enochian, and Davis's testimony may have threatened the deal:
>
> > "That same year, 2017, Serhat Gumrukcu was putting together a successful deal that came together soon after the murder, namely, his significant ownership stake in a biotech company, Enochian Bioscience. Gumrukcu therefore had a strong motive to prevent Davis from reporting yet another fraud, and likely threatening the Enochian deal."

41.     The Hindenburg report further alleged that Gumrukcu is not a licensed doctor in any jurisdiction in the world and that he had pled guilty to felony charges in the midst of the Company's merger in early 2018:

> In collaboration with journalists and investigators in Russia, Denmark, Turkey, and the United States, we conducted an extensive review of Gumrukcu and his colleagues' activities over the last 25 years.
>
> We spoke with Gumrukcu's magician mentor, old teachers, former classmates, business partners, and patients. We contacted many of the organizations that Gumrukcu claims to be associated with, including the universities where he claims to have earned multiple degrees. We have also spoken with many of the victims of Gumrukcu's financial and medical crimes – several of whom seem oddly enraptured by him.

We have concluded that Gumrukcu's claimed background is virtually a complete lie. Far from a highly credentialed scientist, Gumrukcu's career is instead that of an international con artist.

\* \* \*

Eight days later, on January 25, 2018, Gumrukcu appeared and pled guilty to one felony count of Second-Degree Commercial Burglary, per correspondence with California AG.[8] The imposition of his sentence was suspended and Gumrukcu was placed on formal probation for 5 years. The remaining counts were dismissed in light of the plea.

The merger deal closed less than a month later, on February 16th, 2018, while Gumrukcu was a convicted felon awaiting sentencing. We asked Enochian Chairman Rene Sindlev whether he knew of the felony charges before the merger:

> Hindenburg: "But of course you did know of these felony counts before the merger, right?"
>
> Chairman Rene Sindlev: "We did."
>
> Hindenburg: "You did know about them?"
>
> Chairman Rene Sindlev: "Yes."

When asked why it was never disclosed to investors, Sindlev said court records are public.

42.    The report further alleged that he "had siphoned tens of millions of dollars in shareholder cash from Enochian to his privately-owned entities" owned by Gumrukcu and his husband:

We estimate that $20 million has been siphoned to Gumrukcu and his various entities, based on SEC filings:

- On February 17th, 2018, Enochian signed a consulting agreement with Weird Science LLC. Enochian paid $112,500 to Weird Science for "medical services" even though Weird Science's two other named individuals, Carl Sandler and Anderson Wittekind, have no medical background. Anderson Wittekind is Gumrukcu's husband. The original incorporation address for Weird Science matches that of Gumrukcu's former LA home.[]

- On July 9th, 2018, Enochian signed a research contract with G-Tech Bio LLC, initially worth up to $2.6 million, to "assist the Company with the development of" various therapies relating to HIV.[11] G-Tech is owned by Gumrukcu and his husband, Anderson Wittekind, and has no other employees that we can see. Although the initial 20-month term ended, Enochian continues to pay Gumrukcu's privately owned G-Tech Bio $25,000 per month through a seemingly never-ending consulting agreement.  []

- On January 31st, 2020, Enochian entered into a license agreement for a Hepatitis B Vaccine with two entities owned by Gumrukcu or his affiliates– G-Tech Bio and Seraph Research Institute– under which Enochian paid $1.2 million up-front as well as agreeing to continuing payments of $144,500 per month with no clear end date. [] During the 6 months ended December 31st, 2021, Enochian paid out an additional $1.5 million to Gumrukcu's privately owned entities under this agreement. []

- On April 18th, 2021, Enochian entered into an agreement for coronavirus and influenza treatment and prevention research with G-Tech and Seraph Research Institute, both owned by Gumrukcu or his affiliates, that included an up-front payment of $10 million, a $760,000 expense budget, and "additional payments upon the occurrence of certain benchmarks…" []  During the 6 months ended 12/31/2021, Enochian paid out an additional $150,000 to Gumrukcu's privately owned entities under this agreement.

In the last 6 months of 2021 alone, Enochian paid a total of ~$3.5 million to G-Tech Bio, LLC, Gumrukcu's privately-owned for-profit entity that is headquartered in the same building as Enochian[] and that has no employees on LinkedIn.

43.    Moreover, Enochian has been aware of the foregoing allegations against Gumrukcu. Specifically, the Hindenburg report alleged:

Subsequent litigation records show that Enochian has been aware of all the above. Former CFO Robert Wolfe has revealed in court records that he was fired when he asked "critical questions" about Gumrukcu and his criminal record.

He also questioned large payments to Gumrukcu or entities he controlled for "security". SEC filings indicate that Enochian spent at least $780,015 on security expenses in 2019 alone, an odd line item for a small biotech company.

[image omitted]

As reported by Danish media outlet Medwatch, Wolfe sued Enochian in Denmark after his termination, kicking off ongoing and back and forth litigation in both Vermont and Denmark.

Enochian's former CEO, Eric Leire, was also terminated 2 days after Robert Wolfe, with no reason provided.

44.    On this news, the Company's shares fell $1.495, or 28.4%, to close at $3.77 on June 1, 2022, on unusually heavy trading volume.

45.    On June 2, 2022, Enochian issued a letter to the shareholders, stating in relevant part:

These attacks against Enochian Biosciences attempt to conflate the inventor's past with our future as a company – despite the fact that the inventor has never held a formal role with the company; despite the fact that our company had no knowledge of certain legal issues in which the inventor was involved in foreign jurisdictions; and despite the fact that the inventor's scientific advisory role with Enochian was terminated as soon as the company learned about these allegations last week.

The allegations against the inventor are disturbing, and we take them seriously. Personally, while they are still only accusations and everyone is innocent until proven guilty, I was shocked to have learned last week of these allegations and past history.

\* \* \*

The Board and Management were unaware of the lawsuit in Turkey until a writer started contacting Board members late last week.

\* \* \*

The recent, shocking arrest was entirely unknown to any members of Management or the Board until early evening last Tuesday. Details and the specific charges were unknown until the U.S. Department of Justice issued its press release – which was when several of the Board members learned the details of the arrest.

46.     The above statements identified in ¶ 45 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Gumrukcu's purported contributions to the Company lacked a reasonable basis; (2) that, as a result of the foregoing, the Company had overstated its commercial prospects; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

47.     On June 27, 2022, *The Wall Street Journal* published an article entitled "Biotech Wizard Left a Trail of Fraud—Prosecutors Allege It Ended in Murder," claiming that Gumrukcu owed Davis over $900,000 after Gumrukcu coaxed Davis into entering into a fraudulent oil deal with him. The article further alleged that FBI agents were suspicious that Gumrukcu "had fabricated his resume and held neither a medical degree nor a doctoral degree." The article stated, in relevant part:

Prosecutors now allege that Mr. Gumrukcu arranged the murder of a business associate, Gregory Davis, who threatened to expose him as a fraud. Such a revelation would have put at risk the 39-year-old entrepreneur's deal with Enochian, they said.

\*     \*     \*

Mr. Davis believed [the Gumrukcu brothers] owed him more than $900,000 for late fees and penalties, court papers said.

The FBI agent in L.A. said that during her investigation she came to suspect Mr. Gumrukcu of another fraud, "claiming to be an American doctor who had a special cure for cancer and AIDS," according to court papers.

\*     \*     \*

Mr. Davis had arranged to broker a deal to buy refined oil products and resell them at a profit, said a person familiar with the matter. The Gumrukcu brothers agreed to put up the cash in exchange for a percentage of the profit, the person said, in a deal valued between $20 million and $30 million.

Mr. Davis had threatened to expose fraudulent bank documentation by Mr. Gumrukcu and his brother to the FBI, according to a court filing by prosecutors. At the time, the Enochian deal was undergoing its final stages of due diligence, according to court papers.

***Mr. Davis's bank-fraud claims could have derailed the deal, the court filing said. That gave Mr. Gumrukcu "a strong motive to prevent Davis from reporting yet another fraud, and likely threatening the Enochian deal,"*** the filing said.

48.     On this news, the Company's shares fell $0.73, or 21.9%, to close at $2.60 per share on June 27, 2022, on unusually heavy trading volume.

### Post Class Period Events

49.     On July 1, 2022, the Company issued a press release announcing the results of an internal review of its scientific data. Among other things, Enochian stated that "former scientific advisor Serhat Gumrukcu altered two different sets of animal data generated by third-party research institutions before Enochian's scientists had a chance to review" and that "[t]he Company is evaluating its internal controls regarding the review and verification of external scientific data and will modify as appropriate."

## **CLASS ACTION ALLEGATIONS**

50.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Enochian securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Enochian's shares actively traded on the NASDAQ and OTCBB.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class.  Millions of Enochian shares were traded publicly during the Class Period on the NASDAQ and OTCBB.  Record owners and other members of the Class may be identified from records maintained by Enochian or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

54.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Enochian; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

56.     The market for Enochian's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Enochian's securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired Enochian's securities relying upon the integrity of the market price of the Company's securities and market information relating to Enochian, and have been damaged thereby.

57.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Enochian's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Enochian's business, operations, and prospects as alleged herein.

58.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Enochian's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

59.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

60.   During the Class Period, Plaintiffs and the Class purchased Enochian's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

61.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set

forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Enochian, their control over, and/or receipt and/or modification of Enochian's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Enochian, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

62.     The market for Enochian's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Enochian's securities traded at artificially inflated prices during the Class Period.  On November 30, 2021, the Company's share price closed at a Class Period high of $12.55 per share. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Enochian's securities and market information relating to Enochian, and have been damaged thereby.

63.     During the Class Period, the artificial inflation of Enochian's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Enochian's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Enochian and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the

1  Class purchasing the Company's securities at such artificially inflated prices, and each
2  of them has been damaged as a result.

3      64.    At all relevant times, the market for Enochian's securities was an
4  efficient market for the following reasons, among others:

5          (a)    Enochian shares met the requirements for listing, and was listed
6  and actively traded on either the NASDAQ or OTCBB, highly efficient and automated
7  markets;

8          (b)    As a regulated issuer, Enochian filed periodic public reports with
9  the SEC, the NASDAQ, and/or the OTCBB;

10         (c)    Enochian regularly communicated with public investors via
11  established market communication mechanisms, including through regular
12  dissemination of press releases on the national circuits of major newswire services
13  and through other wide-ranging public disclosures, such as communications with the
14  financial press and other similar reporting services; and/or

15         (d)    Enochian was followed by securities analysts employed by
16  brokerage firms who wrote reports about the Company, and these reports were
17  distributed to the sales force and certain customers of their respective brokerage firms.
18  Each of these reports was publicly available and entered the public marketplace.

19      65.    As a result of the foregoing, the market for Enochian's securities
20  promptly digested current information regarding Enochian from all publicly available
21  sources and reflected such information in Enochian's share price. Under these
22  circumstances, all purchasers of Enochian's securities during the Class Period
23  suffered similar injury through their purchase of Enochian's securities at artificially
24  inflated prices and a presumption of reliance applies.

25      66.    A Class-wide presumption of reliance is also appropriate in this action
26  under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*,
27  406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on
28  Defendants' material misstatements and/or omissions.  Because this action involves

1    Defendants' failure to disclose material adverse information regarding the Company's
2    business operations and financial prospects—information that Defendants were
3    obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All
4    that is necessary is that the facts withheld be material in the sense that a reasonable
5    investor might have considered them important in making investment decisions.
6    Given the importance of the Class Period material misstatements and omissions set
7    forth above, that requirement is satisfied here.

8                                **NO SAFE HARBOR**

9            67.    The statutory safe harbor provided for forward-looking statements under
10   certain circumstances does not apply to any of the allegedly false statements pleaded
11   in this Complaint. The statements alleged to be false and misleading herein all relate
12   to then-existing facts and conditions. In addition, to the extent certain of the
13   statements alleged to be false may be characterized as forward looking, they were not
14   identified as "forward-looking statements" when made and there were no meaningful
15   cautionary statements identifying important factors that could cause actual results to
16   differ materially from those in the purportedly forward-looking statements. In the
17   alternative, to the extent that the statutory safe harbor is determined to apply to any
18   forward-looking statements pleaded herein, Defendants are liable for those false
19   forward-looking statements because at the time each of those forward-looking
20   statements was made, the speaker had actual knowledge that the forward-looking
21   statement was materially false or misleading, and/or the forward-looking statement
22   was authorized or approved by an executive officer of Enochian who knew that the
23   statement was false when made.

24
25
26
27
28

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

68.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

69.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Enochian's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

70.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Enochian securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

71.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Enochian's financial well-being and prospects, as specified herein.

72.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Enochian's

value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Enochian and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

73.   Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

74.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Enochian's financial well-being and prospects from the investing public

and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

75.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Enochian's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Enochian's securities during the Class Period at artificially high prices and were damaged thereby.

76.     At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Enochian was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Enochian securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

77.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

79.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

80.     Individual Defendants acted as controlling persons of Enochian within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

82.     As set forth above, Enochian and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: July 28, 2022                    By:   /s/ Pavithra Rajesh
                                        **GLANCY PRONGAY & MURRAY LLP**
                                        Robert V. Prongay
                                        Charles H. Linehan
                                        Pavithra Rajesh
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, CA 90067
                                        Telephone: (310) 201-9150
                                        Facsimile: (310) 201-9160

                                        **THE LAW OFFICES OF FRANK R. CRUZ**
                                        Frank R. Cruz
                                        1999 Avenue of the Stars, Suite 1100
                                        Los Angeles, CA 90067
                                        Telephone: (310) 914-5007

                                        *Counsel for Plaintiffs*

**SWORN CERTIFICATION OF PLAINTIFF**

**ENOCHIAN BIOSCIENCES, INC. SECURITIES LITIGATION**

I, Pier Luigi Manici, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Enochian Biosciences, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Enochian Biosciences, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

7/14/2022

_____

Date

_____

Pier Luigi Manici

**SWORN CERTIFICATION OF PLAINTIFF**

**ENOCHIAN BIOSCIENCES, INC. SECURITIES LITIGATION**

I, Sara Cavagna Manici, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the Enochian Biosciences, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Enochian Biosciences, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

7/16/2022
_____
Date

_____
Sara Cavagna Manici

**Pier Luigi Manici and Sara Cavagna Manici's Transactions in Enochian Biosciences, Inc. (ENOB)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/16/2018 | Bought* | 3,095 | $8.0000 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 96 | $4.9800 |
| 7/9/2021 | Bought | 56 | $4.9800 |
| 7/9/2021 | Bought | 4 | $4.9800 |
| 7/9/2021 | Bought | 1 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 96 | $4.9800 |
| 7/9/2021 | Bought | 34 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 99 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 10 | $4.9800 |
| 7/9/2021 | Bought | 10 | $4.9800 |
| 7/9/2021 | Bought | 900 | $4.9800 |
| 7/9/2021 | Bought | 200 | $4.9800 |
| 7/9/2021 | Bought | 200 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 600 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 80 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 10 | $4.9800 |
| 7/9/2021 | Bought | 10 | $4.9800 |
| 7/9/2021 | Bought | 98 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 10 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 100 | $4.9800 |
| 7/9/2021 | Bought | 65 | $4.9800 |

*Bought in Private Placement